May it please the court. My name is George Andre Fields, Invictus Legal Services, on behalf of Kathleen Whalen. Judge, I would like to reserve three minutes for rebuttal if I may. Your Honors, the issue in this case is whether law enforcement can enter a plaintiff's home, conduct surveillance under false pretenses, and without a warrant, in connection with a disability fraud investigation. We, of course, maintain that that's not appropriate. The District Court got this wrong. The District Court erred in finding that there was no law prescribing Detective McMullen's conduct. We maintain that U.S. v. Boss is directly on point. But you don't have to take our word for it. Opposing counsel, the defendant also believes that Boss is compelling evidence and authority. Turning to the appellee's brief, page 27. Counselor, if I might, you don't challenge the encounter at the door, do you? Challenge it in what respect, Your Honor? In other words, you don't suggest that it wasn't permissive for the investigator to encounter the client at the door? To the extent that the detective used the ruse to lure her to the door, yes. But she didn't use that to lure her to the door. As I understand it, the investigator first met her mother? Correct, Your Honor. And then her mother called her to the door and she came? Actually, she did not come initially to the door. I know that. I just said her mother called her to the door and she came. After she heard Detective McMullen explain the identity theft issue, yes. Do you challenge any of the contact outside the home? No, Judge, we don't challenge the contact outside the home. So you're drawing the line on the home itself? Yes, we are, Your Honor. And do you think there's a case dead-on, even Boss, that makes it clear that that's a line we ought to draw? Yes, I absolutely do. I think Boss is pretty clear on that. Is there any evidence in this case that the defendant was conducting other than a civil investigation? Is there any evidence that whether... Was there any evidence that the defendant, the person you sued, was conducting other than a civil investigation? That's my question. I didn't find any. I don't believe there is any direct evidence that... Your client was never referred for criminal prosecution, right? That's correct, Your Honor. Who made the decision to do this civil investigation? Well, ultimately, it's the Social Security Administration. But wasn't anything to do with law enforcement? It was to do with law enforcement. Well, a law enforcement officer was doing the investigation, but law enforcement didn't suggest that they do the investigation, did they? I'm not quite sure how to answer that since law enforcement is part of the CDIU unit. But just a minute. It's my CDIU suggests that they will do the investigation based on the testimony only for investigating civil benefits, and then they say to this investigator, go investigate. Well, Judge, the investigation itself has both civil and criminal overtures. Just a minute. You didn't answer my question. My question was simple. I looked at this. I looked at all the testimony in the record, and it seems to me pretty clear that the Social Security Agency might have decided that they need to do something for a criminal... for an investigation, a civil investigation. It was referred for civil investigation. Those in charge of the civil investigation never suggested it had any criminal part of it, but they sent this officer out to do this civil investigation, and he was to investigate for civil benefits. Seems to me that's what's in this record. Where would you change that? Because what you're really suggesting is that simply because a criminal investigator or someone who could do criminal investigation does a civil investigation, that at that point in time, it's obviously clear from the case law that what that civil investigator says has to be the truth. Yes, that's correct, Judge. But I don't find anything that says that. You don't find... I look at Boss. Boss has a federal agent entering into a home with a state licensed inspector, and they never say what the ATF agent is doing. He's coming with this licensed inspector, and he goes in and does things that he doesn't... that nobody tells them he's allowed to do. And they say because the federal agent came with a state licensed inspector by a law enforcement officer for a criminal investigation, it would undermine the claim of consent. That's what Boss says. But here, I don't have anybody there for a criminal investigation. I don't even have somebody there as a law enforcement officer, really. He was in general, but here he was sent by civil investigators to do what he had to do. And then he does a ruse. And I guess I'm trying to figure out, is there a good case that would tell me that this officer should have known he shouldn't have done that? And Boss isn't it in my book. So what's the best case? I believe, Judge, that Boss is the best case. Well, what do I do with Foote versus the Commissioner of Social Security? That's an eastern Washington district case that says, oh, that's just fine in Washington. I mean, they don't think Boss thinks that's the way it is in Well, Judge, how do I determine that Boss is all of a sudden so clear that this investigator should have known? You can argue to me, Judge, make the law clear right now. They shouldn't do this in the future. I could say, yeah, probably should. But I'm trying to figure out, since we're really unclearly established, what I'm going to use to say to the officer, you should have known. Well, the officer should have known, Judge, based upon, I would say, Phillips also, U.S. v. Phillips. Well, I look to Phillips. What's the language in Phillips that leads me? To be valid, a consent must be intelligently and knowingly given. I understand that. Is that a criminal case? Yes. Okay. Do you have to have a Ruse case involving a civil investigation in any jurisdiction? We don't have a specific case involving just civil and civil issue, Judge. But I mean, then how was it supposed to be apparent? What what case should Agent McMullen have read that would have told him that this was that this was a violation of the Fourth Amendment? I see my time is running short. I'll make sure that you've got time. Okay. I think that the court is intertwining the civil and the criminal and making a distinction. We didn't start. If this is a problem, we didn't start it, counsel. Right. It was started for us. Right. But, Judge, there's no distinction between the civil and the criminal. Counsel, that point, that point may be a wonderful point, may be absolutely true. But it goes to Judge Smith's question. That may be true. But what case has established that in the past that should have advised Mr. McMullen and his agency that using a Ruse to gain access to a home in a civil investigation is a clear violation of the Fourth Amendment? Point may be may be absolutely right. I intend to ask opposing counsel many questions about this. But for qualified immunity purposes, we have to have some clearly established law. What case should Mr. McMullen have read to have advised him of this point? Again, Judge, I boss is your best is your best is your best case. Okay. Okay. And I will give you some time for rebuttal, Judge. Mr. Lynch. Good morning. May it please the Court, Michael Lynch, Assistant Attorney General, appearing on behalf of Appellee John McMullen. In my argument this morning, I'd first like to address the second prong of the qualified immunity analysis and Ms. Whalen's failure to satisfy her burden of demonstrating clearly established law. Counsel, I'd actually like you to start with the first point. Yes. I'd like you to tell us why this isn't a violation of the Fourth Amendment. I understand why it might not be a clearly established violation of the Fourth Amendment. But how is it that an investigator can come to a house, lie to the owner, and then use two running cameras and enter her home and film her inside her house, and not violate the Fourth Amendment? Well, let me start with Foote, because Foote is the only decision that's on point that involves a CDIU investigation where it rules Now, Foote's not going to be binding on us. It might have good reasoning, but you can use it as you can use it for that. I'm advocating the reasoning of that case, Your Honor. Okay. And in that case, the Court followed Wyman, which involved a determination of eligibility for federal benefits. Sure. These were appointments that were set in advance by people checking on eligibility for welfare benefits. But the homeowners knew in advance that the investigators were coming. That seems to me to be a pretty big distinction between this case and Wyman. It is a distinction, Your Honor, but it's a distinction. It's a distinction without a difference? It's a distinction that has not been settled in the law. Well, I understand. That's point two. I'm not interested in talking about point two right now, counsel. I think that's an easy one. My question is, why haven't you violated the Fourth Amendment? And because this may have implications for how you conduct your business in the future. This, under the Wyman analysis, I'm advocating Wyman controls here. Wyman involves advanced consent. Mr. Smith, we're coming to your house to see if you are eligible for welfare benefits. We will be there on Tuesday at 10 a.m. That's correct. And if Mr. Smith declines to have the investigation occur, then he may be deemed ineligible for welfare benefits. That is not this case. This is a guy going to the front door, lying to the homeowner with two running cameras. He hasn't told her about the cameras. He hasn't told her why he's really there. He's trying to check anything but identity fraud. Under, as Judge Smith got my opponent to admit, there's no allegation of any unconstitutionality until this conversation flowed into the home and Detective McMullin... Except the whole thing's been a lie from start to finish. It may not be a violation of the Fourth Amendment to go out and lure her with a lie out to curb to talk at his truck. But once they go back into the house, she still thinks that he's there to investigate a violation of her identity fraud, that this is an investigation in her favor, not this investigation. And he's got two running cameras. How do you get by with that? In Elmore, this Court upheld the use of ruses in CDI investigations, and those were identity theft ruses. I've cited a number of district court cases which have upheld the use of... Did we say that they weren't violations of the Fourth Amendment or did we... The cases were, I believe, analyzed under the Due Process Clause because the exclusionary rule doesn't apply in administrative hearings. But Foote did analyze this under the Fourth Amendment and did extend Wyman's analysis to this exact situation, holding that it was not a... Wait. Elmore's an unpublished opinion. Unpublished... That means it's not binding on us. Unpublished. I cited Elmore, Your Honor, in relation to the clearly established law prong and... Do we even know the facts? Yes. What were the facts in Elmore? The facts in Elmore were that an identity theft ruse was utilized and there was a challenge arguing that that shocked the conscience, and the Court rejected that argument and said there's nothing nefarious about government investigators... So did we decide this on the basis of the Fourth Amendment or on the basis of the Fifth Amendment or the Fourteenth Amendment, the Due Process Clause? I believe we decided it under the Fourteenth Amendment and Due Process. Okay. So that would be the Due Process Clause. So this case doesn't tell us anything about the Fourth Amendment? No. The only case that I found that... This is where the CDIU investigator went to the home, but they don't indicate whether they entered the home or not. The only case that deals with that is Foote, where they specifically challenged the reasonableness under the Fourth Amendment and the Court held that under Wyman it was not a search, and secondly, if it was a search, it was reasonable, and third, that the criminal law protections do not apply. Let me ask you a question. It is whether it's reasonable in an investigation of civil benefits to do something completely different than one for a criminal investigation. So what would you say are the competing balance of interests that make it different in a civil investigation than criminal? In a criminal investigation, you have a person's individual liberty interest that is at stake. In this situation... So you're saying because one has... might go to jail or might be given a fine that that's different than if one is trying to get government benefits? Yes. Why? Because, well, the Fourth Amendment... I mean, my thing is, if I get down to the first prong, it seems to me I have to determine what is reasonable in an investigation and whether that investigation for civil benefits has a different balance of interest than it would for a criminal investigation. And yet, I have to tell you that CAMRA versus Municipal Court of City and County of San Francisco suggests that the Fourth Amendment protections apply in civil investigations as well as criminal investigations. And Wyman distinguished CAMRA on the basis that in those cases, in CAMRA and in C, the entry, refusing entry into the home, brought a criminal penalty with it. And that was why Wyman distinguished CAMRA. Well, it seemed to me, like Wyman said, the reason that what they did there was okay was because there was no penalty for failing to consent other than the denial of the benefits. So, if I reason that to your particular situation, one could then call out to the lady and say, we're coming to do an investigation for your benefits, and if you don't let us in to investigate, you'll get them denied. But that's not what happened here. No. What happened here is they decided they weren't going to, they didn't know whether they were going to give her the benefits or not, and there was no background that if you don't let us in, you get them denied, so they went out and lied to her to let them in. And I'm still, I'm having a tough time when I'm trying to compare the competing interests there, why I should say it's different if I'm looking at the first prong. And frankly, after this case, it may be that the first prong has got to be decided. Or we can just decide the second prong. But if we decide the first prong, you've got to give me why this is different. Because for Wyman, the only penalty was, no, you don't get any benefits. If that had been the situation here, your call her up and say, let me in, and if she didn't, deny her benefits. But he couldn't do that because you don't have that as something you can do. So you lie. I'm trying to balance why a lie makes it good here just because it's civil rather than criminal. Well, let me come back to Crawford, which was an en banc decision of this court, where there was a home. And the court found that although the entry was improper, that the statements that were made were voluntary. That Crawford and then Flewell, which is an unpublished decision, follows that. And in those cases, the court held that the use of deceit did not render the statements coercive or involuntary. That's a very different standard from a Fourth Amendment standard. That's a Fifth Amendment standard. Or Fourteenth Amendment. It's going to be a due process problem. Well, no, those were criminal cases, so it would be a Fourth and Fifth Amendment standard in those cases. But my point is... You're deciding that testimony is not coerced isn't necessarily a Fourth Amendment question. It's a Fifth Amendment question. It is a Fifth Amendment question, but especially in Flewell, they told the person they were there to investigate threats against the President when they were really there to investigate child pornography. And they took his computer, and the court upheld that. And so the reason I didn't argue the first prong is because, as some law review writers have noted, the law in this area is a quagmire. I tried to bring a simple, straightforward issue to the court, which is the second prong. And may I suggest that if you think it's appropriate to address, to have the first prong addressed, the Foote case would be the appropriate case in which to have that decided. I just looked at Foote again. It recites Wyman and then says there's no search, no problem, and it's reasonable. There's no reasoning that follows it. It's very worrisome. But it's before this court on appeal. And so my point was that in that case, you have the Commissioner of Social Security as a party. And in that case, the issue was briefed below. And I can't see the briefs, because they're SSI briefs. But assuming that issue is before you — If I look at the magistrate's opinion in Foote, I believe that the plaintiff contends the investigating agent used deceptive tactics that shocked the conscience. That doesn't sound like Fourth Amendment language, although there is Fourth Amendment language in the opinion later on. So it may not be on point. It may have waived the Fourth Amendment problem. The investigator is — similarly, the investigator's actions did not involve a search, were not unreasonable, and were not conducted in aid of any criminal proceeding. As I read that case, it addresses both the Fourth Amendment and the Fourteenth Amendment issues. Thank you. Unless you'd like to hear anything about my second argument, which is the one that they waived any claim here because there's no cause in fact due to Ms. Whelan's admission in her deposition that she would have let the officer in anyway — I think that's been adequately briefed. Then I will yield my time and request that you affirm the order granting summary judgment. Thank you. Thank you, Mr. Lynch. Mr. Fields? Judges, looking at the district court order in this case, the district court specifically acknowledged that the investigations conducted by the CDIU are done for the purposes of criminal prosecution and or civil administrative action. I don't think that you can separate out civil fraud and criminal fraud in these cases, especially where you have a criminal investigator going into the home. It seems to me that the district court was simply quoting the facts that were in the record. That's why I went further into the facts and asked you the questions that I did. These investigations can be both for criminal and civil. It's all up to the person who sends out the investigator, and the investigator is told why he's to do what he's supposed to do. And in this instance, this investigator was told, there is no criminal part of this. It's all civil, and you're to go out there and do a civil investigation. That's all you're supposed to do. That's what's in the record. And that's what he did. It just so happens that as a part of that civil investigation, he told a lie in order to get the lady to let her into his house, into her house. And I believe also in his deposition, he testified that these cases can evolve into criminal prosecution. They can be, but that's not what he was sent out to do. And that's why my next question to you was going to be, was she ever referred for criminal prosecution? She was not referred. That's correct, Judge. All right. Okay. I just wanted to touch on that. Thank you, Judges. I don't know. Thank you. We thank counsel for the argument. Whalen v. McMillan is submitted.
judges: Bybee, N.R. Smith, Antoon